**SO ORDERED.**

**SIGNED this 22 day of March, 2012.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

IN RE:

ROBERT F. YOUNGBLOOD CONSTRUCTION       CHAPTER 11
COMPANY,                                CASE NO. 12-01188-8-RDD

    DEBTOR

**ORDER DENYING MOTION
TO EXTEND THE AUTOMATIC STAY**

Pending before the Court is the Motion to Extend Stay Regarding Lawsuits Against Robert F. Youngblood and Jeanette A. Youngblood, filed by Robert F. Youngblood Construction Company on February 16, 2012 (the "Motion) and the Response in Opposition to the Motion filed by Branch Banking and Trust Company ("BB&T") on March 1, 2012 (the "Response"). The Court conducted a hearing on the Motion and the Response in New Bern, North Carolina on March 6, 2012.

**BACKGROUND**

Robert F. Youngblood Construction Company ("Youngblood Construction") and RF Youngblood Family LLC ("Family LLC") (collectively hereinafter referred to as the "Debtors"), filed for relief under Chapter 11 of the Bankruptcy Code on February 15, 2012. The Debtors are engaged in the business of commercial and residential building and real estate development in

Onslow and Carteret counties. Robert F. Youngblood is president and 49% stockholder of Youngblood Construction. Jeanette A. Youngblood is corporate treasurer and 51% stockholder of Youngblood Construction. Mr. and Mrs. Youngblood (collectively hereinafter referred to as the "Youngbloods") are member/managers and each own a 50% interest in Family LLC.

Youngblood Construction owns thirteen (13) parcels of real property including residential rental properties, forty-two (42) lots of developed land known as Kingsbridge II, completed residences for sale, and several additional tracts. Family LLC owns a 56.16 acre tract of undeveloped land in Onslow County. The Youngbloods individually own an island located on the Bogue Sound in Morehead City, consisting of twenty-five (25) acres (the "Island Property"). The Youngbloods believe the Island Property has a value of approximately $3 million to $4 million dollars.

BB&T is the sole secured creditor of Youngblood Construction with respect to its real property. Youngblood Construction's Schedule D list the secured claim as $1,535,706.11. In addition to its real property, Youngblood Construction owns eighteen (18) trucks and trailers and eighteen (18) pieces of machinery used in the course of its land development business. Schedule D lists Caterpillar Finance as holding a claim secured by the equipment in the amount of $4,226.88.

BB&T is the sole secured creditor of Family LLC. Family LLC's Schedule D lists the secured claim as $1,115,559.50 with an unsecured portion of $285,319.50.

The Youngbloods executed absolute guaranty agreements on all indebtedness of Youngblood Construction and Family LLC to BB&T.

The 56.15 acre tract owned by Family LLC is cross collateralized with the Kingsbridge II subdivision and four (4) waterfront lots located on the Island Property.

The Debtors defaulted on their indebtedness to BB&T. BB&T initiated lawsuits and foreclosure proceedings against the Debtors and the Youngbloods individually. The following lawsuits have been filed against the Debtors and the Youngbloods: (a) BB&T v. Robert F. Youngblood; Jeanette A. Youngblood; RF Youngblood Family LLC; and Robert F. Youngblood Construction Company; Case No. 12 CVS 39, Superior Court Division, Carteret County and Onslow County, N.C.; (b) Foreclosure proceedings 12 SP 49; 12 SP 50; 12 SP 51; and 12 SP 52, Carteret County, N.C.; and (c) Foreclosure proceedings 12 SP 61; 12 SP 62; and 12 SP 64, Onslow County, N.C. The Debtors request this Court to stay the lawsuits and foreclosures against the non-debtors Robert F. Youngblood and Jeanette A. Youngblood. The Debtors contend that there is sufficient identity of interest between the Youngbloods and the Debtors such that the lawsuits and foreclosures will distract the Youngbloods from reorganizing and irreparably harm the bankruptcy estate. BB&T contends that the automatic stay provision of 11 U.S.C. § 362 does not protect the Youngbloods individually because they are non-bankrupt guarantors of the Debtors.

## DISCUSSION

The Court finds that the automatic stay provision of 11 U.S.C. § 362 does not stay actions against the Youngbloods individually. The Fourth Circuit has found that the automatic stay only protects "the debtor, not third party defendants or co-defendants." *Kreisler v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2007) (citing *A.H. Robins Co., v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). Courts have extended the automatic stay to certain non-debtor third parties in "unusual circumstances." *Id.* An unusual circumstance has been defined as "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real-party defendant and that a judgment against the third-party defendant will in effect be a judgment or

3

finding against the debtor."*Id.* (quoting *A.H. Robins Co., v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). The *Robins* Court went on to explain that "[a]n illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." *Id.*

This Court has previously addressed the issue of whether the automatic stay extends to a debtor's principal in *In re KVS Foodsystems, LLC*, 2009 WL 1241272 (Bankr. E.D.N.C. April 29, 2009). There, the principal formed the debtor to operate a Subway and served as the debtor's managing member. *Id.* at * 1. The principal, in his individual capacity, entered into a franchise relationship with Subway and subleased the restaurant space from Subway. *Id.* The debtor did not hold a leasehold interest in the restaurant space, but did operate the Subway restaurants. *Id.* The principal breached on the sublease agreements causing Subway to file two (2) complaints for summary ejectment against the principal in state court. *Id.* at * 1-2. The debtor sought to extend the automatic stay to stay any proceedings against the principal, individually. *Id.* at *2. The principal testified that he operated the Subway locations as if the debtor was the owner of such stores and payments owed by the principal were drawn upon an account of the debtor. *Id.* The Court held the principal and the debtor were separate and distinct entities and there were no "unusual circumstances" which would justify extending the automatic stay to the non-debtor third party. *Id.* at *3. Furthermore, the Court noted that the automatic stay should not be extended to non-estate property "when another remedy is available under the Bankruptcy Code. In this situation, [the principal] is not without a remedy. He retains the ability to file an individual bankruptcy petition under the appropriate chapter should he determine that it is in his interest to do so to gain the benefit of the automatic stay." *Id.* at *4.

In *Credit Alliance Corp. v. Williams*, 851 F.2d 119 (4th Cir. 1988) the Fourth Circuit held that the automatic stay should not be extended to actions against a surety or guarantor of the debtor. *Credit Alliance*, 851 F.2d at 122. There, the creditor obtained a default judgment against the guarantor in another forum. *Id.* at 120. The debtor's guarantor then sought the benefits of the automatic stay. *Id.* The Fourth Circuit found that there were no "unusual circumstances" about the guaranty agreement at issue that would permit the Court to extend the stay to the non-debtor guarantor. *Id.* at 121. In so holding, the Court stated "[n]othing in § 362 suggests that Congress intended that provision to strip from the creditors of a bankrupt debtor the protection they sought and received when they required the third party to guaranty the debt." *Id.* The Court went on to note "'[t]he very purpose of a guaranty is to assure the [creditor] that in the event the [debtor] defaults, the [creditor] will have someone to look to for reimbursement.'" *Id.* at 122 (quoting *Rojas v. First National Bank Ass'n*, 613 F. Supp. 968, 971 (E.D.N.Y. 1985)).

At the hearing on March 6, 2012, Ms. Youngblood testified that she and her husband work full-time in the Debtors' operations on a daily basis. They are the sole agents and representatives working on the marketing and sale of real property, and the obtaining of home construction contracts on sold lots. Ms. Youngblood believes that harm would result to the estate if the automatic stay is not extended, because she and her husband would be required to devote their attention to the defense of the lawsuits rather than to the reorganization of the Debtors. Additionally, in accordance with Family LLC's Operating Agreement, if any of the plaintiffs in the lawsuits are awarded a judgment against the Youngbloods, the Family LLC would be required to indemnify the Youngbloods for any such judgment and related liability.

The Debtors rely on *In re Shearin Family Investments, LLC*, No. 08-07082-8-JRL (Bankr. Sept. 23, 2009) for the proposition that the automatic stay should be extended to the Youngbloods because there is a sufficient identity of interest between the Youngbloods and the Debtors so that harm will result to the bankruptcy estate if the Youngbloods are distracted from reorganization. The facts in *In re Shearin Family Investments, LLC* are distinguishable from the present case. There, individual plaintiffs filed lawsuits against the debtor's principal based on the failure of the debtor to complete and deliver a condominium unit to the plaintiffs in a timely manner. *Id.* at 2. The debtor sought to extend the automatic stay to the principal and argued the principal was the sole employee of the debtor and spent 95% of his time managing the debtor's project. *Id.* at 3. If the suits were not stayed against him, his time and attention would be diverted from the debtor's reorganization to the lawsuits. *Id.* at 2. The lawsuits in *In re Shearin Family Investments, LLC* potentially imposed new liability on the debtor and principal. The case was at a "critical juncture" and the debtor's plan, if successful had the possibility of mooting the suits against the principal. *Id.* at 3.

In the present case, the lawsuits are based upon the guaranty agreements signed by the Youngbloods. The lawsuits do not subject the Debtors to any additional liability. If BB&T collects from the Youngbloods as guarantors, the Youngbloods may then, collect from the Debtors the amounts they paid to BB&T. Here, the Debtors' plan would not necessarily moot the BB&T suits against the Youngbloods, as the personal guaranties created an independent obligation of the Debtors.

Additionally, the Fourth Circuit has noted that a typical guaranty agreement is not an "unusual circumstance." "Nothing in § 362 suggests that Congress intended that provision to strip from the creditors of a bankrupt debtor the protection they sought and received when they required

6

the third party to guaranty the debt." *Credit Alliance Corp.* 851 F.2d at 121. The Court finds that the guarantor relationship at issue does not present any "unusual circumstances." The guaranty agreements provide "[a]s an inducement to BB&T to extend credit to and to otherwise deal with [the Debtors] the [Youngbloods]. . . jointly and severally. . . hereby absolutely and unconditionally guarantee to [BB&T] . . . the due and punctual payment of any and all notes, drafts, debts, obligations and liabilities, primary or secondary . . . of [the Debtors], at any time, . . . ." Here, the Youngbloods, as an inducement to BB&T to lend to the Debtors, offered their absolute and unconditional personal guaranties. This is a common practice in financing transactions and does not present an "unusual circumstance . . . [in which] there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant," *Robins*, 788 F.2d at 994.

As was the case in *In re KVS Foodsystems, LLC*, the Court finds that the automatic stay should not be extended to Robert F. Youngblood and Jeanette A. Youngblood and non-estate property "when another remedy is available under the Bankruptcy Code. In this situation, [the Youngbloods] are not without a remedy. [They] retain the ability to file an individual bankruptcy petition under the appropriate chapter should [they] determine that it is in [their] interest to do so to gain the benefit of the automatic stay." 2009 WL 1241272 at *4  (Bankr. E.D.N.C. April 29, 2009).

Therefore, the motion to extend the automatic stay is **DENIED.**

**SO ORDERED.**

**END OF DOCUMENT**